Robert S. Reder (024117)
Shayna Fernandez Watts (027342)
BLYTHE GRACE PLLC
4040 East Camelback Road, Suite 275
Phoenix, Arizona 85018
Telephone: (602) 237-5366
Facsimile: (602) 237-5546
Email: robert@blythegrace.com
Email: shayna@blythegrace.com
Attorneys for Plaintiff Damon Mondy

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Damon Mondy,<br><br>Plaintiff,<br><br>v.<br><br>Eclipse Portfolio Operations LLC d/b/a Elmcroft Senior Living,<br><br>Defendant. | No.<br><br>**COMPLAINT**<br><br>**(1) DISCRIMINATION BASED ON SEX AND RACE**<br><br>**(2) RETALIATION**<br><br>**(3) HOSTILE WORK ENVIRONMENT**<br><br>**(Jury Trial Demanded)** |

Plaintiff Damon Mondy hereby alleges as follows in support of his Complaint against Defendant Eclipse Portfolio Operations LLC d/b/a Elmcroft Senior Living ("Elmcroft").

**PARTIES, JURISDICTION, AND VENUE**

1. Mr. Mondy is an individual who resides in the State of Arizona.

2. Eclipse Portfolio Operations LLC, a Delaware corporation, is Mr. Mondy's former employer and conducts business in Arizona under the name Elmcroft Senior Living.

3. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), *et seq.*, as amended by the Civil Rights Act of 1991, at 42 U.S.C. §1981(a) ("Title VII").

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

5. At all times relevant hereto, Elmcroft was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of their employment,

1 and under the direct control of the Elmcroft.

2   6.   Elmcroft caused events or omissions in Arizona that gave rise to Mr. Mondy's damages and are, for that and other reasons, subject to the personal jurisdiction in this Court.

4   7.   At all times relevant hereto, Elmcroft is and has been an employer as defined under Title VII and is accordingly subject to the provisions of each said act.

6   8.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all the events or omissions giving rise to Mr. Mondy's claims occurred in this judicial district.

## GENERAL ALLEGATIONS IN SUPPORT OF ALL CLAIMS

9   9.   Mr. Mondy commenced employment with Elmcroft on or around December 9, 2018 as a cook.

11   10.   Armina Eberl was the Dining Services Director at Elmcroft who supervised Mr. Mondy.

13   11.   During Mr. Mondy's job interview, Ms. Eberl became very interested in Mr. Mondy's personal life and remained so throughout his employment.

15   12.   Ms. Eberl questioned Mr. Mondy about the status of his relationship constantly while Mr. Mondy was at work over Mr. Mondy's objections.

17   13.   When Ms. Eberl learned that Mr. Mondy and his girlfriend had broken up, Ms. Eberl tried to set Mr. Mondy up with her niece.

19   14.   Ms. Eberl told Mr. Mondy that her niece worked in Hong Kong as a domestic helper.

20   15.   Ms. Eberl then told Mr. Mondy her niece had a son, but that her niece had not been with a man in 10 years, which made her "like a virgin again".

22   16.   Ms. Eberl continued and told Mr. Mondy that he would have to take sex slow with her because she is tight like a virgin and that with Mr. Mondy being Black, she knows he has a big penis.

25   17.   A witness heard Ms. Eberl say words to this effect to Mr. Mondy and Elmcroft has her notarized statement.

27   18.   Later that day, Ms. Eberl told Mr. Mondy that he better be good to her niece, and that if he did not stay with her, that she would find a way to fire him. Ms. Eberl remarked that

2

she was close with Carrie Todd and could get away with it.

19. Carrie Todd is the Area Director of Human Resources.

20. After the *quid pro quo* sexual harassment, Mr. Mondy called the company's compliance line and reported Ms. Eberl's comment.

21. Someone in the compliance department told Mr. Mondy that they would be in contact.

22. Mr. Mondy never heard back from anyone at Elmcroft regarding this report, and, upon information and belief, Elmcroft did not investigate his complaint.

23. After Mr. Mondy repeatedly refused a relationship with Ms. Eberl's niece and made efforts to block her communications, Ms. Eberl began treating Mr. Mondy differently and retaliating against him.

24. On February 1, 2019, Ms. Eberl told Mr. Mondy that there was no such thing as Black History Month, that Black people are always crying about things and wanting free stuff.

25. Ms. Eberl said, "Black History Month? HA! We all Asian today."

26. At that point, like any other reasonable person in his situation, Mr. Mondy felt he had tolerated enough abuse, harassment, disrespect, and insults and decided to report Ms. Eberl to Elmcroft again.

27. Mr. Mondy finished cleaning the kitchen from breakfast and told Ms. Eberl that he was going clock out and would be calling the compliance line to report everything that has been going on as soon as he got home.

28. Ms. Eberl threatened him saying, "If you leave, you will be sorry."

29. Mr. Mondy responded saying, "I will not stand for you treating me this way any longer."

30. As Mr. Mondy was driving home, Ms. Eberl called Mr. Mondy and terminated him.

31. Mr. Mondy asked Eberl on what grounds, and Eberl said her boss and friend (Ms. Todd) said Mr. Mondy had abandoned the residents for lunch.

32. Mr. Mondy asked her if she told Ms. Todd what happened and why he had left and Ms. Eberl said in response, "I told you, that you be sorry" and hung up the phone.

3

33. Mr. Mondy called the compliance line and spoke to the intake person when he got home.

34. Mr. Mondy told the woman who answered all of the events that had taken place including the *quid pro quo* sexual harassment and the threats.

35. The compliance line person informed Mr. Mondy that she would take his report and would be forwarding it to HR.

36. Mr. Mondy told her that the last time he filed a report about the sexual harassment against Ms. Eberl that no one called him back and pleaded for a call back or else he would be reporting the conduct to the EEOC.

37. Around 6:00 p.m. that day, Mr. Mondy received a call from a Texas number from a woman who introduced herself as Ms. Todd's boss.

38. The woman said she had received the complaint Mr. Mondy filed, and said she would like for Mr. Mondy to talk to her about what happened.

39. Mr. Mondy told the woman from Texas about Ms. Eberl's harassment, threats, and quid pro quo sexual harassment.

40. The woman told Mr. Mondy that Ms. Eberl's comments were "not allowed" and that, because her husband is Afro-American, she can see how that kind of talk is "offensive."

41. The woman told Mr. Mondy not to talk to anyone about his report, that Elmcroft was going to look into it, and that Mr. Mondy would be receiving a call the next day from Ms. Todd (Ms. Eberl's boss and friend).

42. Mr. Mondy asked her if he would be able to have his job back, and she said it will take time to investigate everything.

43. The woman asked Mr. Mondy if he was willing to work under Ms. Eberl again to which Mr. Mondy responded, "If this were a woman reporting a man had done all of this to her, would he still have a job?" The woman paused for a bit then said, "I see."

44. The next day, Mr. Mondy received a call from Ms. Todd.

45. Mr. Mondy again reported Eberl's treatment of him, the comments and threats, and the *quid pro quo* sexual harassment to Ms. Todd.

4

46. Ms. Todd said she would investigate and get back to him and told Mr. Mondy to be sure not to talk to anyone about his complaint.

47. Ms. Todd asked Mr. Mondy if he would be willing to work under Ms. Eberl if he came back to which Mr. Mondy responded again, "If I were a woman complaining about a man doing all of this to me, would that man still have a job? Would she be forced to continue to work with someone that did all of those things to her?" Ms. Todd did not have a response to that question.

48. Mr. Mondy never heard back from anyone at Elmcroft about the investigation or about his job.

49. Elmcroft's articulated reason for terminating Mr. Mondy was pretextual and his employment was terminated based on his sex and in retaliation for opposing unlawful discrimination.

50. Elmcroft is vicariously liable for the harassment of Mr. Mondy by his supervisor, Ms. Eberl.

51. Elmcroft is strictly liable for Ms. Eberl's actions.

52. Elmcroft further failed to meet its obligations under Title VII to investigate and remedy harassment and discrimination in the workplace.

53. Elmcroft's actions were intentional and Elmcroft acted with malice or a reckless disregard for Mr. Mondy's federally protected rights.

54. Mr. Mondy timely filed a Charge of Discrimination against Elmcroft with the Arizona Attorney General's Office and Equal Employment Opportunities Commission on August 7, 2019.

55. The EEOC issued Mr. Mondy a Notice of Right to Sue on or about February 1, 2021 which he received shortly thereafter. **Exhibit A**.

56. On April 27, 2021, Elmcroft and Mr. Mondy entered into a tolling agreement that tolled the statute of limitations or any other legal or administrative deadline for the claims alleged in this Complaint.

57. Elmcroft terminated the tolling agreement on July 23, 2021.

5

## CLAIMS FOR RELIEF

### Count I: Discrimination (42 U.S.C. § 2000e-2 et seq.)

58. Mr. Mondy incorporates herein by reference each and every preceding allegation as though fully set forth herein.

59. Under Title VII, it is an unlawful employment practice for an employer to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of sex, or race.

60. Elmcroft unlawfully discriminated against Mr. Mondy in violation of Title VII, 42 U.S.C § 2000e-2 et seq., because of his sex and race by subjecting him to severe or pervasive conduct that was subjectively and objectively offensive, changed the terms, and conditions of his employment and that created a hostile work environment.

61. Elmcroft knew or should have known of the discrimination and failed to take prompt and effective remedial action to make the conduct cease.

62. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by Elmcroft in violation of the Title VII, Mr. Mondy sustained permanent and irreparable harm, resulting in his termination from employment, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

63. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Elmcroft in violation of the Title VII, Mr. Mondy suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

### Count II: Retaliation (42 U.S.C. § 2000e-3(a))

64. Mr. Mondy incorporates herein by reference each and every preceding allegation as though fully set forth herein.

65. Under Title VII, it is an unlawful employment practice for an employer to discriminate against any of its employees because the employee opposed any practice that is an unlawful employment practice under Title VII.

66. Mr. Mondy complained to managers and supervisors of conduct which he reasonably

believed to be an unlawful employment practice under Title VII, 42 U.S.C. § 2000e-2 et seq.

67. Elmcroft knew or should have known of the retaliation and failed to take prompt and effective remedial action to make the conduct cease.

68. Elmcroft unlawfully discriminated against Mr. Mondy in violation of Title VII, 42 U.S.C. § 2000e-2 et seq., by subjecting him to adverse employment actions and severe and pervasive conduct which changed the terms of Mr. Mondy's employment and created a hostile work environment because he opposed conduct which he reasonably believed to be an unlawful employment practice under Title VII.

69. Elmcroft further disciplined Mr. Mondy by terminating him in retaliation for Mr. Mondy's opposition to what he reasonably believed to be an unlawful employment practice under Title VII in violation of Title VII, 42 U.S.C. § 2000e-3(a).

70. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by Elmcroft in violation of the Title VII, Mr. Mondy sustained permanent and irreparable harm, resulting in his termination from employment, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

71. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Elmcroft in violation of the Title VII, Mr. Mondy suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

### Count III: Hostile Work Environment

72. Mr. Mondy incorporates herein by reference each and every preceding allegation as though fully set forth herein.

73. Elmcroft subjected Mr. Mondy to a hostile working environment by failing to remedy or oversee the harassment and discrimination at Elmcroft by a Director.

74. The hostile work environment was severe and pervasive based on the nature of the harassment.

75. Mr. Mondy considered the Ms. Eberl's conduct towards him to be discriminatory, and reported said discriminatory conduct to numerous management level employees of

7

Elmcroft.

76. Accordingly, Elmcroft was fully aware of the hostile work environment.

77. However, despite Mr. Mondy's numerous complaints of harassment and discrimination, Elmcroft failed to conduct an investigation or otherwise cause the discriminatory conduct to cease.

78. Rather than cause the discriminatory conduct to cease, Elmcroft terminated Mr. Mondy's employment.

79. Elmcroft's reason for Mr. Mondy's termination is pretextual.

80. Accordingly, Elmcroft's discriminatory acts have deprived Mr. Mondy of equal employment opportunities.

81. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by Elmcroft in violation of Title VII that resulted in a hostile work environment, Mr. Mondy sustained permanent and irreparable harm, resulting in his termination from employment, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

82. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by Elmcroft in violation of Title VII that resulted in a hostile work environment, Mr. Mondy suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## JURY DEMAND

Mr. Mondy demands a trial by jury on all issues and claims so triable.

## REQUEST FOR RELIEF

WHEREFORE, Mr. Mondy respectfully requests that the Court:

a) Enter judgment for Mr. Mondy and against Elmcroft on all counts;

b) Award Mr. Mondy all recoverable damages, in an amount to be proven at trial;

c) Award Mr. Mondy punitive and/or exemplary damages on all claims under which such damages are legally available in an amount to be determined at trial;

d) Award Mr. Mondy attorneys' fees and costs incurred herein, on all the bases upon

1 which such expenditures are compensable to Mr. Mondy;

2 e) Award Mr. Mondy pre and post judgment interest at the highest rate allowed by law;
3 and

4 f) Award Mr. Mondy any other relief that the Court deems just and proper under the
5 circumstances.

6     DATED this 26th day of July 2021.

BLYTHE GRACE PLLC

/s/ *Shayna Fernandez Watts*
Robert S. Reder
Shayna Fernandez Watts
4040 East Camelback Road, Suite 275
Phoenix, Arizona 85018
Attorneys for Plaintiff Damon Mondy